HALL, Judge.
Plaintiffs brought this redhibitory action under LSA-C.C. Arts. 2520,[1] et seq. against Courtesy Ford Company, Inc. and Ford Motor Company, seeking to rescind the sale of a new 1977 Thunderbird because it contained an alleged redhibitory defect which caused excessive vibration and noise while the automobile was in operation. The defendants denied the existence of the defect and alternatively pleaded that the defect, if it existed, was an apparent defect discoverable by simple inspection and, therefore, did not constitute a redhibitory vice under LSA-C.C. Art. 2521.[2] After trial the district court “with some misgivings” held that if plaintiffs evidence as to the vibration and noise was accepted as true then the defect was apparent from the time plaintiff *886 first started the automobile and drove it away from the dealer’s place of business and cannot serve as the basis for rescinding the sale. From a judgment rejecting their demands plaintiffs appealed.
On appeal the plaintiffs — appellants pose the issues involved as follows:
(1) Does the vehicle have a vice or defect which renders it either absolutely useless or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it had he known of the vice, thereby giving rise to the redhibitory action?;
(2) Are the alleged defects “apparent defects” thereby precluding the purchaser from rescinding the sale?; and
(8) Does the special ordering of a vehicle with specific options chosen by the purchaser give rise to damages for mental anguish and emotional distress when the vehicle fails to meet the expectations of the purchaser?
Plaintiff, Jack Wallace, ordered the automobile in June 1977 as a present for his wife who accompanied him to the defendant dealership to make the choice of color and extras for the vehicle. In August the dealer called Mr. Wallace and advised him the vehicle had been received. Mr. Wallace went to the dealership, wrote a check for the vehicle, got into it and started toward his home. As he left the dealer’s place of business he observed excessive noise which varied at different speeds and circumstances of operation. Mrs. Wallace noticed the noise when she rode in the car.
Plaintiff attempted to return the vehicle to the dealer the following day, which was Saturday, but the service department was closed. Plaintiff was advised to bring it back when the salesman from whom he had purchased the car returned from vacation. Plaintiffs continued to observe the vibration and noise and took the car back in to the dealership when the salesman returned to work a couple of weeks later. At that time the car had about 200 miles on it. The salesman provided plaintiffs with a comparable automobile to drive free of charge while their new car was being repaired.
The dealer kept the car for six or seven months and made various attempts to eliminate the problem. The assistant district sales manager of Ford Motor Company was contacted and he in turn contacted Ford’s district service manager. They advised the service department of several steps to be taken in order to attempt to eliminate the vibration and noise.
Finally, in March 1978 the dealer wrote plaintiffs and told them their car was ready and asked them to return the car they had been furnished. Mr. Wallace picked up the automobile and found that the noise situation was the same. He placed the car in storage and it was not driven after that except for test drives by various persons who inspected it. This suit was filed in July 1978.
The case was tried in May 1980 at which time the automobile registered 1,600 miles on the odometer.
In addition to their own testimony, plaintiffs offered the testimony of several experts, all of whom found abnormal and excessive noise. Defendants offered the testimony of several expert witnesses, all of whom testified there was no excessive noise, based on their previous examinations and tests of the automobile.
During trial, the trial judge rode in the automobile at the request of all parties to the suit. His reasons for judgment reflect that “a droning, roaring noise of significant and disturbing volume and intensity was apparent. It was noted immediately upon the start of the motor with the transmission in ‘park’, when accelerating to street or highway speed, when going uphill — in short, when the motor was in a ‘strain’.”
The Ford expert, who had previously testified he could not hear any unusual noise in the car, testified after riding in the car with the trial judge that this was the first time he had heard the noise. He conceded the noise was “annoying.” He described the noise as a “roar”, as “abnormal” and testified it “bothered” him.
Mr. Wallace described the noise as an “awful roaring racket” and a “high tension *887 vibrating roar.” Mrs. Wallace said it sounded “like a log truck.” One of plaintiffs’ experts called it an “obnoxious vibration.” Another expert noticed “vibration and roaring noise.” Another expert found “a drumming vibration” and “a drumming noise that drummed through the body of the car.” He termed it abnormal and excessive.
It stands to reason that defendants would not have made the repair efforts they made over such a long period of time if a problem had not existed to start with.
The evidence establishes to a legal certainty that the automobile makes an excessive, vibrating noise at various speeds and that the noise is abnormal, unusual, annoying, and irritating.
Comfort and quietness are features of an expensive new automobile which the manufacturer and dealer advertise and the purchaser expects to receive. An unusual, abnormal, annoying, roaring, vibrating noise of the type described as made by the car involved here is a vice or defect which makes the use of the automobile so inconvenient or imperfect that the purchaser would not have bought it if he had known it existed and could not be remedied. The vice is redhibitory in nature, entitling plaintiffs to rescind the sale, unless the defect was an apparent defect within the meaning of LSA-C.C. Art. 2521.
The defect was not an apparent one, discoverable by simple inspection. The noise is a manifestation or result of the defect, not the defect itself. The defect in the manufacture of the automobile that causes the abnormal vibration and noise has not been discovered to this day, in spite of examination and testing by numerous expert mechanics, and obviously is not apparent.
When Mr. Wallace first started the automobile and drove it away from the dealership, he had no way to know and no reason to believe the noise would continue and could not be remedied. He tried to take the car back the next day, and when the dealership finally took the car back for repairs a couple of weeks later, it was with expectations that the problem could be remedied. The permanent, redhibitory nature of the defect was not apparent to anyone concerned at the time the sale was made.
Plaintiffs established they paid $7,852 for the automobile. They paid $204.50 for sales tax, license, title and recording fees, and $674.02 as interest on a bank loan obtained to finance the purchase. They are entitled to recover the purchase price and costs totaling $8,730.52. Defendant is entitled to a credit for plaintiffs’ use of the dealer’s automobile furnished to them, which was driven 5,747 miles over a period of 209 days. We fix the amount of the credit at $1,500.
Under LSA-C.C. Art. 2545, plaintiffs are also entitled to recover a reasonable attorneys fee from the manufacturer, Ford Motor Company, which we fix at $2,000.
Plaintiffs are not entitled to recover for mental anguish and emotional distress. The selection of special option equipment does not change the principal object of purchasing an automobile from physical gratification to intellectual enjoyment. Meador v. Toyota of Jefferson, 332 So.2d 433 (La. 1976).
For the reasons assigned, the judgment of the district court is reversed and set aside. Judgment is rendered in favor of plaintiffs, Jack Wallace and Florence Wallace against Courtesy Ford Company, Inc. and Ford Motor Company, in solido, for the sum of $7,230.52, with legal interest thereon from date of judicial demand until paid, and for all costs of this proceeding, including the costs of appeal, payable upon return of the 1977 Thunderbird automobile to Courtesy Ford Company, Inc. Judgment is further rendered in favor of plaintiffs against Ford Motor Company for the sum of $2,000 as attorneys fees.
Reversed and rendered.

. “Art. 2520. Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.”

. “Art. 2521. Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhi-bitory vices.”